994 So.2d 1062 (2008)
UNITED STATES of America, et al., Appellants,
v.
Maureen STEVENS, etc., Appellee.
No. SC07-1074.
Supreme Court of Florida.
October 30, 2008.
*1063 Peter D. Keisler, Assistant Attorney General, Jeffrey S. Bucholtz, Principal Deputy Assistant Attorney General, Jonathan F. Cohn, Deputy Assistant Attorney General, and Douglas Letter and H. Thomas Byron III, Staff Attorneys, United States Department of Justice, and Tami Lyn Azorsky of McKenna, Long and Aldridge, LLP, Washington, D.C.; R. Alexander Acosta, United States Attorney for the Southern District of Florida, and Kathleen M. Salyer, Deputy Chief, Appellate Division, and Dexter A. Lee, Senior Litigation Counsel, Civil Division, United States Attorney's Office, Miami, FL; and Martin B. Woods and Marissa D. Kelley of Stearns, Weaver, Miller, Weissler, Alhadeff and Sitterson, P.A., Fort Lauderdale, FL, for Appellants.
Phillip M. Burlington and Bard D. Rockenbach of Burlington and Rockenbach, P.A., and Richard Schuler of Schuler, Halvorson and Weiser, P.A., West Palm Beach, FL, for Appellee.
*1064 ANSTEAD, J.
The United States Court of Appeals for the Eleventh Circuit has certified the following question of Florida law that is determinative of a cause pending in that court and for which there appears to be no controlling precedent:
Under Florida law, does a laboratory that manufactures, grows, tests or handles ultra-hazardous materials owe a duty of reasonable care to members of the general public to avoid an unauthorized interception and dissemination of the materials, and, if not, is a duty created where a reasonable response is not made where there is a history of such dangerous materials going missing or being stolen?
Stevens v. Battelle Mem'l Inst., 488 F.3d 896, 904 (11th Cir.2007). We have jurisdiction. See art. V, § 3(b)(6), Fla. Const. For the reasons that follow, we answer the first part of the certified question in the affirmative, and therefore, we need not address the second part.

PROCEEDINGS TO DATE
The Eleventh Circuit outlined the plaintiff's injuries and allegations:
In the fall of 2001, an unknown group or individual mailed letters containing Bacillus Anthracis ("anthrax") to recipients in Florida, New York, and Washington, D.C. One such letter was mailed to American Media, Inc. ("American Media") in Boca Raton, Florida where Robert Stevens ("Mr. Stevens") worked. Mr. Stevens became ill and died after inhaling the anthrax. As a result, two wrongful death suits were brought by Maureen Stevens, his wife, individually, as a personal representative of the estate of Mr. Stevens, and on behalf of their three children (collectively "Stevens"). Stevens sued the United States in federal court and Battelle Memorial Institute ("Battelle"), a private research facility, in state court, alleging that they were the source of the anthrax that killed Mr. Stevens. Battelle removed the state case to federal court and the two suits were consolidated for discovery purposes.
The complaint against the United States, brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., alleged that the origin of the strain of anthrax that killed Mr. Stevens could be traced to the United States Army Medical Research Institute for Infectious Diseases ("USAMRIID") at Fort Detrick, Maryland. The suit alleged further that the government knew it was utilizing an "ultra-hazardous" material requiring the highest degree of care in its handling, storage, use, and possession, and that, as early as 1992, samples of anthrax were missing from USAMRIID. The complaint stated that despite this knowledge, the government failed to provide adequate security for the handling or shipping of the materials, and, as a result, sometime before October 2001 anthrax was improperly intercepted either from USAMRIID or from another research facility to which the materials had been sent. The complaint does not describe the relationship between the government and the person who initially intercepted the anthrax or between the government and the person who eventually mailed the anthrax to American Media.
The complaint against Battelle alleged that Battelle breached its duty of care to Mr. Stevens by failing to implement adequate security procedures at its facility. The suit alleged, inter alia, that Battelle failed to properly maintain the anthrax it was using for research, monitor employees who had access to the anthrax, or secure the facility from unauthorized access. The complaint also alleged that Battelle was negligent in its hiring practices because it failed to conduct background investigations prior to *1065 hiring individuals who would have access to anthrax. Finally, the complaint alleged negligent supervision of employees working with anthrax. As a result of these failings, the complaint alleged that anthrax was obtained and sent to American Media.
Stevens, 488 F.3d at 898-99 (footnote omitted).[1]
The government moved to dismiss the complaint, arguing that
it could not be liable for any third party criminal activity allegedly occasioned by negligent security practices because it owed no duty of protection to Mr. Stevens, a stranger, and did not have a duty or ability to control the unidentified third party tortfeasor or tortfeasors responsible for intercepting and mailing the anthrax. Reiterating this argument, Battelle moved for judgment on the pleadings pursuant to Rule 12(c). Battelle also argued that Stevens could not satisfy the element of proximate cause. Stevens responded to these motions by arguing that the complaint did not allege a claim of failure to control or prevent the mailing of the anthrax by a third party criminal, but, rather, a claim of duty of care "whenever a human endeavor creates a generalized and foreseeable risk of harming others."
Id. at 899. The federal district court denied the government's and Battelle's motions, describing Stevens' claim as falling under Florida's "foreseeable zone of risk" theory and citing this Court's decisions in McCain v. Florida Power Corp., 593 So.2d 500 (Fla. 1992), and Kaisner v. Kolb, 543 So.2d 732, 735 (Fla.1989). Stevens, 488 F.3d at 899. The district court examined this theory within the context of the "unreasonable risk of harm by affirmative act" rule embodied in sections 302, 302A, and 302B of the Restatement of the Law of Torts and the special relationship requirement embodied in section 315 of the Restatement. Id. The district court found that the allegations of negligent security sufficiently stated a claim under either section 302B or section 315 of the Restatement to allow the claim to proceed. Id. at 900-01.
The government moved for leave to seek reconsideration, which the district court denied. Stevens, 488 F.3d at 901-02. The court, however, granted the government's request for certification of the order denying the motion to dismiss for interlocutory appeal, certifying a question similar to the one the Eleventh Circuit certified to this Court. Id. at 902. On appeal to the Eleventh Circuit, the court noted that "[t]he central issue here is what duties exist under Florida law to protect members of the public where an organization creates a significant risk by using anthrax or another ultra-hazardous material." Id. at 903. The court certified the instant question of Florida law to this Court, while observing that Florida case law imposes limits on negligence liability, but "it fails to fit neatly into the complex factual pattern at hand." Id.

ANALYSIS
Preliminarily, we note that this case involves a claim of negligence, which *1066 we have explained consists of four components:
1. A duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks.
2. A failure on the [defendant's] part to conform to the standard required: a breach of the duty....
3. A reasonably close causal connection between the conduct and the resulting injury. This is what is commonly known as "legal cause," or "proximate cause," and which includes the notion of cause in fact.
4. Actual loss or damage....
Clay Elec. Coop., Inc. v. Johnson, 873 So.2d 1182, 1185 (Fla.2004) (quoting Prosser and Keeton on the Law of Torts § 30, at 164-65 (W. Page Keeton ed., 5th ed.1984)). In certifying a question to this Court, the court of appeals has asked us to focus on the duty component of our negligence analysis as it may apply to allegations set out in the federal complaint.[2]
In McCain, this Court explained that the duty element ordinarily arises from four potential sources: "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." 593 So.2d at 503 n. 2 (citing Restatement (Second) of Torts § 285 (1965)).
In this case, it appears that the claimant is asserting that a duty arises from the general facts of the claim as alleged in the complaint. In McCain, we explained that the determination of the existence of a common law duty flowing from the general facts of the case depends upon an evaluation and application of the *1067 concept of foreseeability of harm to the circumstances alleged, which is a threshold question of law. See id. at 502-04. We have explained, where a person's conduct is such that it creates a "foreseeable zone of risk" posing a general threat of harm to others, a legal duty will ordinarily be recognized to ensure that the underlying threatening conduct is carried out reasonably. Id. at 503. We have also explained that as a general proposition the greater the risk of harm to others that is created by a person's chosen activity, the greater the burden or duty to avoid injury to others becomes. "Thus, as the risk grows greater, so does the duty, because the risk to be perceived defines the duty that must be undertaken." Id. at 503 (citing J.G. Christopher Co. v. Russell, 63 Fla. 191, 58 So. 45 (1912)).
Importantly, this Court has emphasized that "reliance on the McCain foreseeability test [is] appropriate because we had intended McCain to function `as a restatement of the law of negligence.'" Williams v. Davis, 974 So.2d 1052, 1058 (Fla.2007) (quoting Whitt v. Silverman, 788 So.2d 210, 218 (Fla.2001)). Again, we reaffirm our previous declarations that the "foreseeable zone of risk" test discussed in McCain is the test to be applied under Florida law to determine whether a duty exists under our negligence law.
Given the nature of the parties' assertions in the district court, it is not surprising that the defendants seek to focus on what they perceive to be the unforeseeable criminal agency of a third party in causing harm to the decedent, while the claimant seeks to focus on the magnitude of the risk of harm created by the defendants' decision to deal with such a dangerous substance. Nevertheless, in determining whether certain conduct creates a "foreseeable zone of risk," it is appropriate to acknowledge that we have looked for guidance in sections 302, 302A, and 302B of the Restatement (Second) of Torts (1965), because these sections largely mirror our "foreseeable zone of risk" analysis in McCain. These sections provide:
§ 302. Risk of Direct or Indirect Harm.
A negligent act or omission may be one which involves an unreasonable risk of harm to another through either
(a) the continuous operation of a force started or continued by the act or omission, or
(b) the foreseeable action of the other, a third person, an animal, or a force of nature.
§ 302A. Risk of Negligence or Recklessness of Others.
An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third person.
§ 302B. Risk of Intentional or Criminal Conduct.
An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.
Restatement (Second) of Torts §§ 302-302B (1965). Comment "e" to section 302B further provides that there are two situations where an actor "is required to anticipate and guard against the intentional, or even criminal, misconduct of others": (1) "where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would take into account," or (2) where the actor is under a special responsibility to the victim. Restatement (Second) of Torts § 302B cmt. e (1965).
*1068 In the instant case, we conclude that the district court appropriately turned to sections 302, 302A, and 302B of the Restatement for guidance in determining whether a duty exists under Florida law.[3] While we could "reinvent the wheel" and set out our own analysis as to the application of the principles of these sections to the circumstances alleged here, we acknowledge that we could not improve upon the district court's analysis. Because we agree with Judge Hurley's analysis, we adopt the portion of his order regarding the application of these sections to the certified question:
The duties described [in sections 302, 302A, and 302B of the Restatement] attach to acts of commission, which historically generate a broader umbrella of tort liability than acts of omission, which are the subject of §§ 315 and 314A. This distinction is expressed in Comment a, Section 302 of the Restatement of Torts (Second):
This section is concerned only with the negligent character of the actor's conduct, and not with his [or her] duty to avoid the unreasonable risk. In general, anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable [person] to protect them against an unreasonable risk of harm to them arising out of the act. The duties of one who merely omits to act are more restricted, and in general are confined to situation[s] where there is a special relation between the actor and the other which gives rise to the duty.
In this case, plaintiff alleges that the government generated, tested and handled deadly laboratory organisms, but failed to employ adequate security procedures during the commission of these acts. Thus, plaintiff contends, the government exposed the public to an unreasonable risk of contamination as a result of unauthorized interception and disbursement of lethal materials. In other words, the complaint effectively alleges the commission of affirmative acts (ownership and handling of biohazards), which, under Section 302b, give rise to a corresponding duty to protect all others exposed to any "unreasonable risk of harm" arising out of that activity.
Considered in conjunction with the further allegations of the complaint regarding the facility's history of missing samples of anthrax bacterium, hanta virus and ebola virus dating back to 1992, which the court must accept as true at this juncture, the court concludes that plaintiff's complaint states a potential claim under Section 302B of the Restatement (Second) of Torts (1965) against the government and will accordingly uphold the sufficiency of the complaint on this basis.
In doing so, the court draws from Florida case law precedent clearly recognizing that negligence liability may be imposed on the basis of affirmative acts which create an unreasonable risk of harm by creating a foreseeable opportunity for third party criminal conduct, even though there is no "special relationship" between the parties that independently imposes a duty to warn or guard against that misconduct. See e.g. Shurben v. Dollar Rent-A-Car, 676 So.2d 467 (Fla. 3d DCA 1996). In Shurben, a British tourist was accosted by unknown criminals while traveling in a rental car bearing a license plate designation easily recognized by knowledgeable criminals as the mark of a rental car. The consumer sued the rental *1069 agency in tort, contending that it should have realized criminals were targeting tourist car renters in certain areas of Miami and that a reasonable rental company would have understood that its customers would be exposed to unreasonable risk of harm if not protected against this risk. Although the rental agency and customer did not stand in any "special relation" toward each other, the Court concluded that the circumstances alleged stated a claim within the scope of Section 302B of the Restatement (Second) of Torts (1965), and sustained the plaintiff's complaint on this theory.
Similarly, taking the facts alleged in the complaint as true and reading them in the light most favorable to plaintiff here, the plaintiff's complaint may fairly be read to allege: (1) defendant knew or should have known of the risk of bioterrorism associated with lethal laboratory organisms under its ownership and control, particularly in light of its history of missing laboratory specimens dating back to 1992; (2) a reasonable medical research and testing laboratory operator in possession of those facts would understand that the public would be exposed to an unreasonable risk of harm unless it implemented adequate security procedures to guard against the risk of unauthorized interception of toxic materials from its laboratory; (3) the death of Mr. Stevens was a foreseeable consequence of the defendant's failure to use reasonable care in adopting and implementing security measures reasonably necessary to protect against the possibility of unauthorized interception and release of the biohazards under its control.
In the court's view, these allegations are sufficient to establish a duty of care under Section 302B of the Restatement (Second) of Torts (1965). See e.g. Suchomajcz v. Hummel Chemical Co., Newark, New Jersey, 524 F.2d 19 (3d Cir.1975); Touchette v. Ganal, [82 Hawai`i 293,] 922 P.2d 347 (Haw.1996).
Stevens v. United States, No. 03-81110, at 9-12 (S.D.Fla. Apr. 15, 2005) (footnotes omitted).
In responding to the certified question we agree with the court of appeals that the "complex factual pattern at hand" presents a unique challenge to the courts that must ultimately be resolved upon the facts as developed in the trial court. As we stated in McCain, duty "is a minimal threshold legal requirement for opening the courthouse doors. . . . As is obvious, a defendant might be under a legal duty of care to a specific plaintiff, but still not be liable for negligence because proximate causation cannot be proven." 593 So.2d at 502-03 (footnote omitted). In the instant case, we have no way of knowing whether Stevens will ultimately be able to prove a case against the defendants. However, we conclude that Stevens' allegations are sufficient to open the courthouse doors. The allegations assert that the government and Battelle have affirmatively chosen to work with an ultrahazardous substance that poses virtually unparalleled risk of injury to the general public if its security is not assured.[4] In coping with *1070 the heightened duty that comes with this risk, the government and Battelle are required to contemplate a countless variety of situations in which a reasonable laboratory in their position must anticipate and guard against the unauthorized interception and dissemination of the dangerous substance. Given the allegations of negligent security of the ultrahazardous material and the virtual impossibility of potential victims to protect themselves once this substance is at large, this is obviously one of those cases we contemplated in McCain, where the risk of injury is great and the corresponding duty of the lab is heightened. In a very real sense, it is this inability to measure the extent of this risk that merits giving the claimants an opportunity to go forward. Of course, the ultimate outcome of this case and the law it develops will be determined by the actual facts of the case as established in the trial court.

CONCLUSION
We hold, therefore, consistent with the analysis set out above, that a laboratory that manufactures, grows, tests or handles ultrahazardous materials does owe a duty of reasonable care to members of the general public to avoid an unauthorized interception and dissemination of the materials. We answer the certified question in the affirmative and return this case to the Eleventh Circuit.
It is so ordered.
QUINCE, C.J., PARIENTE, and LEWIS, JJ., concur.
WELLS, J., dissents with an opinion.
CANADY and POLSTON, JJ., did not participate.
WELLS, J., dissenting.
I dissent from the majority's answer to the certified question, which asks specifically:
Under Florida law, does a laboratory that manufactures, grows, tests or handles ultra-hazardous materials owe a duty of reasonable care to members of the general public to avoid an unauthorized interception and dissemination of the materials, and, if not, is a duty created where a reasonable response is not made where there is a history of such dangerous materials going missing or being stolen?
Stevens v. Battelle Mem'l Inst., 488 F.3d 896, 904 (11th Cir.2007) (emphasis added). The crux of the question concerns liability for injuries resulting from a defendant's work with ultrahazardous materials. The majority errs in answering this question on the basis of negligence law and this Court's decision in McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992). Contrary to the majority's analysis, liability for injuries resulting from ultrahazardous activities is controlled by application of section 519 of the Restatement of Torts (1938). Therefore, I would answer the certified question on the basis of section 519.
*1071 Great Lakes Dredging & Dock Co. v. Sea Gull Operating Corp., 460 So.2d 510, 512 (Fla. 3d DCA 1984), sets out the law of Florida in respect to liability for ultrahazardous activities:
In accord with a growing body of jurisdictions in this country, Florida courts have adopted the doctrine of strict liability for ultrahazardous or abnormally dangerous activity as established by Rylands v. Fletcher, [(1868) 3 L.R.E. & I.App. 330 (H.L.) ], and reformulated by the Restatement of Torts §§ 519, 520 (1938), and Restatement (Second) of Torts (Tent. Draft No. 10, 1964). Hutchinson v. Capelletti[Capeletti] Brothers, 397 So.2d 952 (Fla. 4th DCA 1981); Cities Service Co. v. State, 312 So.2d 799 (Fla. 2d DCA 1975); see also Pensacola Gas Co. v. Pebley, 25 Fla. 381, 5 So. 593 (1889). In the leading case of Cities Service Co. v. State, supra, the Second District Court of Appeal of Florida, speaking through Judge Grimes, traces the history of the Rylands v. Fletcher doctrine, concludes that it is the law of Florida, and adopts the doctrine as reformulated by the American Law Institute, to wit:
The American Law Institute has considered this question in §§ 519 and 520 of the Restatement of the Law of Torts (1938).
These sections state:
§ 519. MISCARRIAGE OF ULTRAHAZARDOUS ACTIVITIES CAREFULLY CARRIED ON.
Except as stated in §§ 521-4, one who carries on an ultrahazardous activity is liable to another whose person, land or chattels the actor should recognize as likely to be harmed by the unpreventable miscarriage of the activity for harm resulting thereto from that which makes the activity ultrahazardous, although the utmost care is exercised to prevent the harm.
Thus, the law in Florida is that where an injury is proximately caused by an ultrahazardous activity, a defendant is liable to "to another whose person, land or chattels the actor should recognize as likely to be harmed." Restatement of Torts § 519 (1938). Applying section 519 to the certified question leads to a conclusion that a laboratory working with ultrahazardous materials has a duty to safeguard the ultrahazardous materials. The existence of such a duty is the foundation upon which strict liability stands.
However, this Court must be mindful that strict liability due to engaging in ultrahazardous activities is not limitless liability. Because neither the Restatement nor Florida law has extended liability for ultrahazardous activities to the "general public," I ultimately would answer the certified question in the negative.
I believe that the majority's decision to turn to negligence law to answer this question confuses Florida law in respect to ultrahazardous materials. McCain is not on point since that case does not involve ultrahazardous activities. For the same reason, sections 302, 302A, and 302B of the Restatement (Second) of Torts are not relevant.
I recognize that in footnote one of its opinion, the Eleventh Circuit Court of Appeals states: "The complaint against the government originally included a claim for strict liability, but the government argued that the [Federal Tort Claims Act] did not waive sovereign immunity for strict liability claims, and after Stevens conceded the issue, this claim was dismissed by the district court." Stevens, 488 F.3d at 898. This footnote should not cause this Court to change Florida law in answering the certified question. Florida law should not be contorted to fit the parameters of the *1072 Federal Tort Claims Act (FTCA). The legal question of whether the defendants in this case owed a duty to Mr. Stevens should turn on the facts of the case, not on whether a particular defendant is immune from suit.
It is also important that this Court answer the certified question about ultrahazardous materials based on section 519 because our answer will not be applied only to claims brought pursuant to the FTCA. First, the certified question does not expressly limit itself to claims brought under the FTCA. Second, the facts of the present case belie any implied limitation because the defendant Battelle Memorial Institute is not covered by the FTCA.
Furthermore, in addition to overlooking the analytic distinction between ultrahazardous activities and general negligence, I believe that the majority errs in its interpretation of this Court's decision in McCain. In McCain, this Court stated broadly that "the proper inquiry for the reviewing appellate court is whether the defendant's conduct created a foreseeable zone of risk." 593 So.2d at 504. However, the Court refined that statement later in the opinion by concluding that "there can be no question but that Florida Power had the ability to foresee a zone of risk. By its very nature, power-generating equipment creates a zone of risk that encompasses all persons who foreseeably may come in contact with that equipment." Id. (emphasis added).
Thus, in McCain, the Court did not expand the concept of duty to be a duty to protect the general public. Rather, the duty was to all persons "who foreseeably may come in contact with that equipment." Id. This limitation on the extent of a defendant's duty is similar to the extent of an actor's liability for injuries caused by ultrahazardous activities, which as stated above, extends only to persons the actor should know are likely to be harmed by the ultrahazardous activity.
In conclusion, in this case we are only to answer the certified question and not to decide whether the appellee stated a cause of action. My answer to the certified question would be that the laboratory owes a duty of care to those who operators of the laboratory should recognize are likely to be injured by contact with the ultrahazardous material.
NOTES
[1] The Federal Tort Claims Act sets forth the elements necessary to impose liability on the United States. 28 U.S.C. § 1346(b) (2000). It states in part:

[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages,. . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
§ 1346(b)(1).
[2] The dissent inaccurately characterizes the certified question as one involving strict liability. The certified question, however, is properly characterized as one involving Florida negligence law, not strict liability. This focus is supported by at least three reasons. First, the plaintiffs conceded that a strict liability claim could not be brought against the government. Stevens, 488 F.3d at 898 n. 1. After this concession, the district court dismissed the strict liability claim. Id. Second, the certified question presents an issue involving Florida's negligence law, not strict liability. The certified question asks whether a laboratory owes a "duty of reasonable care." Id. at 904 (emphasis added). Strict liability does not concern itself with whether the actor exercised reasonable care. Indeed, section 519 of the Restatement of Torts (1938), which the dissent relies on for support, imposes liability on "one who carries on an ultrahazardous activity . . . although the utmost care is exercised to prevent the harm." (Emphasis added.) Third, all case law discussed in the federal district court order and the Eleventh Circuit's opinion deal with negligence law. Indeed, the trial court's order discusses the issues presented in this case under the headings "Negligence Claim against the United States" and "Negligence Claim Against Battelle." After discussing the proceedings to date, the Eleventh Circuit even notes that "[a]lthough the Florida case law discussed above reveals some limits on negligence liability, it fails to fit neatly in the complex factual pattern at hand." 488 F.3d at 903. Strict liability is understandably the first cause of action that comes to mind in a case like this. However, the instinct to apply strict liability should not preclude an analysis of whether an actor dealing in ultrahazardous activity owes a duty of reasonable care. The fact that the actor engages in ultrahazardous activity does not mean that the actor does not have a duty to act reasonably. Accordingly, McCain is not only applicable, it is the starting point for any duty analysis under Florida's negligence law.

We also note that none of the federal proceedings discuss section 519 of the first or second restatement of tort law. The only reference to section 519 in the briefs is in Stevens' answer brief under the heading "Liability Of Possessor Of Wild Animal," wherein Stevens tries to analogize anthrax to the escape of a wild animal. Brief of Appellee at 19-23.
[3] We do not address the district court's application of the special relationship requirement embodied in section 315 of the Restatement because McCain's "foreseeable zone of risk" test is dispositive.
[4] The government argues that the plaintiffs allege omissions to act (nonfeasance), not affirmative acts (misfeasance). It further asserts that any distinction between the two is unworkable in practice because a plaintiff may simply recast their allegations in terms of misfeasance when in reality the acts are those of nonfeasance. The plaintiffs have alleged that the defendants created a new and expansive risk of harm by failing to secure the anthrax. The allegations, if true, assert that Mr. Stevens' position was actually made worse by the failure to secure the anthrax. These are allegations of misfeasance, not nonfeasance. The distinction between misfeasance and nonfeasance was best explained by Prosser and Keeton on the Law of Torts:

The reason for the distinction may be said to lie in the fact that by "misfeasance" the defendant has created a new risk of harm to the plaintiff, while by "nonfeasance" he has at least made his situation no worse, and has merely failed to benefit him by interfering in his affairs. . . .
. . . .
. . . Failure to blow a whistle or to shut off steam, although in itself inaction, is readily treated as negligent operation of a train, which is affirmative misconduct; . . . The question appears to be essentially one of whether the defendant has gone so far in what he has actually done, and has got himself into such a relation with the plaintiff, that he has begun to affect the interests of the plaintiff adversely, as distinguished from merely failing to confer a benefit upon him.
Prosser and Keeton on the Law of Torts § 56, at 373-75 (W. Page Keeton et al. eds., 5th ed.1984) (footnotes omitted).