DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ASAEL ABAD,** et al.
Appellant,

v.

**G4S SECURE SOLUTIONS (USA), INC.,** a Florida corporation,
Appellee.

Nos. 4D18-2658 and 4D19-1064

[April 1, 2020]

Consolidated appeals from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Donald W. Hafele, Judge; L.T. Case Nos. 50-2017-CA003447-XXXX-MB and 50-2018-CA-005598-XXXX-MB.

Kristoffer R. Budhram of the Law Offices of Conrad J. Benedetto, Jacksonville, and Andrew A. Harris of Burlington & Rockenbach, P.A., West Palm Beach, and Diana L. Martin of Cohen Millstein Sellers & Toll, PLLC, Palm Beach Gardens, for appellant.

Andrew R. DeVooght and Jeremy D. Margolis of Loeb & Loeb LLP, Chicago, Illinois, and William N. Shepherd and Richard C. Hutchison of Holland & Knight LLP, West Palm Beach, for appellee.

CONNER, J.

In this consolidated appeal stemming from the horrific mass murders at Pulse nightclub in 2016, the survivors and decedents' representatives (collectively, "Appellants") appeal the dismissals of their negligence lawsuits against G4S Secure Solutions (USA), Inc. ("G4S"). Because Appellants did not sufficiently allege a legal duty owed by G4S to Appellants, we affirm.

*Background*

On June 12, 2016, Omar Mateen ("Mateen") entered Pulse and killed forty-nine people and wounded fifty-three others. The amended complaints alleged the following facts.

At the time of the mass murder, Mateen was employed by G4S, after he was hired in September 2007 to work as a "Custom Protection Officer."

Prior to employing and training him, G4S knew that Mateen had been dismissed from a corrections officer training class just months before for suggesting that he would bring a gun to class, specifically alluding to the then-recent mass shooting on the Virginia Tech campus.

His position required him to carry a firearm while working, which in turn required him to obtain a Class G gun license issued by the State of Florida. To assist with obtaining the Class G license, G4S submitted a fraudulent psychological evaluation of Mateen. G4S also provided Mateen with an initial twenty-eight hours of training, including eight hours of firearms training at a gun range, followed by an annual four hours of renewal training thereafter. Appellants alleged that such training "contributed to M[ateen] not only becoming a proficient gun user, but also to becoming an expert marksman."

During Mateen's ten years of employment, G4S was put on notice that Mateen was an unstable and dangerous individual who expressed a desire to commit acts of mass murder against members of the general public, particularly against members of the lesbian, gay, bisexual and transgender community.

While Mateen was working under a G4S subcontract with the St. Lucie County Sheriff's Department to provide security at the St. Lucie County Courthouse, the Sheriff's Department demanded that G4S remove Mateen. The request was made because Mateen repeatedly threatened his colleagues, claimed to be in league with the terrorist groups al-Qaeda and Hezbollah, claimed to be associated with the Boston Marathon bombers, expressed a desire to martyr himself, and praised the actions of the Army major who shot forty-five people at Fort Hood, Texas.

Despite knowledge of the above-described incidents, G4S did not have Mateen undergo a psychological evaluation to determine his fitness to work as an armed security guard, but instead, moved him to another location. At his new jobsite, Mateen worked with another G4S employee who was a former police officer. The co-worker reported to G4S that Mateen was "unhinged and unstable," was in a constant state of anger, "engaged in frequent homophobic and racist rants, and 'talked about killing people.'" The co-worker made repeated requests to be transferred away from Mateen. When the repeated requests were ignored, the co-worker quit working for G4S.

Approximately two weeks before the massacre, Mateen attempted to purchase body armor and ammunition from a licensed gun dealer, without showing his Class G firearm license, and was turned away. Then, about a week later, he brought his Class G license to a different gun dealer and purchased the guns he later used in the massacre. Mateen's security licenses, including his Class G license, were a reason the dealer decided to sell the firearms Mateen used for the massacre.

The dismissed complaints alleged the duty as follows:

> The G4S D[efendants] have a duty to make an appropriate investigation of their prospective employees prior to, and use due care in, hiring them, providing them with firearm training, retaining them as employees, or obtaining/maintaining their Class G firearms licenses, but failed to do so with regard to M[ateen].

The trial court dismissed the amended complaints for failure to sufficiently allege a duty owed by G4S to Appellants. Appellants gave notice of appeal.

*Appellate Analysis*

An appellate court reviews a final order granting a motion to dismiss for failure to state a cause of action under a de novo standard of review. *Mitleider v. Brier Grieves Agency, Inc.*, 53 So. 3d 410, 412 (Fla. 4th DCA 2011). Appellate review "is limited to the four corners of the complaint [and] [t]he facts alleged in the complaint must be accepted as true and all reasonable inferences are drawn in favor of the pleader." *Id.* (quoting *Goodall v. Whispering Woods Ctr., L.L.C.*, 990 So. 2d 695, 697 (Fla. 4th DCA 2008)).

Appellants maintain that they were owed a legal duty because they were in the foreseeable zone of risk to the general public created by G4S when it: (1) hired Mateen as an armed guard despite knowing he wanted to copy the Virginia Tech shooting; (2) trained him to become an expert marksman; (3) ignored disturbing and threatening behavior while on the job; and (4) assisted him in fraudulently obtaining a gun license that helped him purchase the weapons he used in the shooting. Appellants also contend their duty arguments are not grounded on theories of employer liability; instead, they contend the duty imposed on G4S arises from the unique facts of this case.

In order to maintain a negligence claim, the plaintiff must allege and prove the following elements: (1) the existence of a legal duty; (2) a breach of that duty; (3) causation; and (4) damages. *Kohl v. Kohl*, 149 So. 3d 127, 134 (Fla. 4th DCA 2014). With regard to the duty element, we have explained:

> [W]hether a duty exists is a question of law for the court. *Goldberg v. Fla. Power & Light Co.*, 899 So. 2d 1105, 1110 (Fla. 2005). Crucial to the duty inquiry is "whether the defendant's conduct foreseeably create[s] a broader 'zone of risk' that poses a general threat of harm to others." *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992). "[T]he zone of risk created by a defendant defines the scope of the defendant's legal duty and the scope of the zone of risk is in turn determined by the foreseeability of a risk of harm to others." *Smith v. Fla. Power & Light Co.*, 857 So. 2d 224, 229 (Fla. 2d DCA 2003).

*Knight v. Merhige*, 133 So. 3d 1140, 1144-45 (Fla. 4th DCA 2014) (second and third alterations in original).

Florida law has recognized that a duty may arise from four sources: (1) statutes and other legislative enactments; (2) case law; (3) other judicial precedent; and (4) the general facts of the case. *Jackson Hewitt, Inc. v. Kaman*, 100 So. 3d 19, 28 (Fla. 2d DCA 2011). "Th[is] fourth category encompasses 'that class of cases in which the duty arises because of a foreseeable zone of risk arising from the acts of the defendant.'" *Id.* (quoting *McCain*, 593 So. 2d at 503 n.2).

In this case, Appellants argue that the fourth category—the facts of the case—demonstrate that G4S's actions created a broader zone of risk to the general public and imposed a legal duty upon it. In support of their argument, Appellants rely heavily on *United States v. Stevens*, 994 So. 2d 1062 (Fla. 2008), where the unique facts of the case gave rise to a duty to the general public. In *Stevens*, a victim was mailed a letter containing anthrax, which he subsequently inhaled and died from as a result. *Id.* at 1064. The anthrax was traced to a United States Army research facility, and the victim's estate filed a wrongful death action against the United States government. *Id.* The complaint alleged the government breached its duty to properly monitor and secure the anthrax. *Id.* The government moved to dismiss the complaint, arguing that it could not be liable for the criminal acts of a third party. *Id.* at 1065. The Florida Supreme Court found that although there was no special relationship between the government research facility and the victim, the research facility owed a

4

duty to the general public under the facts of the case. *Id.* at 1069. Specifically: (1) the research facility worked with a known ultrahazardous substance; (2) the government knew of the risks of anthrax to the general public unless there were adequate security measures in place; and (3) the victim's death was foreseeable given the inadequate security measures. *Id.* at 1069-70.

In the instant case, Appellants argue that like *Stevens*, the unique facts of this case created a foreseeable zone of risk to the general public that rose to a legal duty to the general public. Specifically, G4S was aware of the risk Mateen posed because it was aware of his disturbing behavior and sympathy for mass murderers, it knew or should have known of the risk of assisting someone like Mateen to obtain a security and Class G firearm license without a psychological evaluation, and it knew or should have known of the increased risk with each year as they continued to give Mateen firearm training. Appellants argue that *Stevens* does not require that the defendant to have created the deadly product or have the ability to control the deadly product; rather, simply that the defendant's actions have created a foreseeable zone of risk. This, as argued by Appellants in their initial brief, resulted in creating a "nexus to committing a mass shooting [as] every bit as dangerous as the third-party criminal actor's use of anthrax in *Stevens*." We disagree.

The comparison of the deadliness of firearms with the deadliness of anthrax is not appropriate for two reasons. First, as the trial court noted, guns are "ubiquitous," and weapons training is an "intangible" that cannot be traced to the training provided by G4S. Second, firearms are frequently viewed as beneficial to society as instruments designed for protection, whereas anthrax is generally viewed as harmful to society as an instrument solely designed for terrorist purposes.

We agree with G4S that "Mateen was an individual with free agency who was outside of G4S's control and who committed crimes on his own time, with his own weapons and resources, at a location of his choosing."

If we were to agree with Appellants that the facts of this case establish that G4S's actions created a broader zone of foreseeable risk to Appellants as members of the general public, "[t]he inquiry then turns to whether the duty of care created by this conduct extends to the misconduct of . . . a third party." *Dorsey v. Reider*, 139 So. 3d 860, 864 (Fla. 2014). It is a well-established common law rule that a person or entity generally has no legal "duty to prevent the misconduct of third persons." *Kaman*, 100 So. 3d at 28 (quoting *Michael & Philip, Inc. v. Sierra*, 776 So. 2d 294, 297 (Fla.

4th DCA 2000)). Florida does recognize, however, two exceptions to this general rule.

The first exception is when there exists a "special relationship between the defendant and the person whose behavior needs to be controlled or the person who is a foreseeable victim of such conduct." *Palmer v. Shearson Lehman Hutton, Inc.*, 622 So. 2d 1085, 1089 (Fla. 1st DCA 1993). Here, Appellants concede that there was no special relationship between G4S and Appellants at the time of the shooting.

The second exception is when "the defendant is in actual or constructive control of: (1) the instrumentality; (2) the premises on which the tort was committed; or (3) the tort-feasor." *Daly v. Denny's, Inc.*, 694 So. 2d 775, 777 (Fla. 4th DCA 1997) (citing *Vic Potamkin Chevrolet, Inc. v. Horne*, 505 So. 2d 560, 562 (Fla. 3d DCA 1987)). Appellants concede that G4S was not in actual or constructive control of the premises of Pulse nightclub.

Appellants also concede that Mateen did not use weapons owned or controlled by G4S, but instead, weapons purchased by him on his private time. Appellants' argument that by fraudulently assisting Mateen in obtaining a Class G license—which in turn was helpful in purchasing the weapons used—is legally irrelevant. A Class G license only allowed Mateen to work as an armed security guard. *See* § 493.6115, Fla. Stat. (2019). It was not a legal requirement for him to be able to purchase personal weapons. *See* Art. I, §8, Fla. Const.; § 790.065, Fla. Stat. (2019). As G4S points out, even though one gun dealer subjectively considered the license in his decision to sell Mateen the weapons used, the license was not a legal requirement spelled out in the Florida Constitution or statutes and, thus, is irrelevant in the analysis. Mateen could have purchased the same weapons from any number of gun dealers in Florida without the license. We are not persuaded by Appellants' attempt to minimize the impact of G4S's argument by contending that the argument goes to proximate cause and not duty.

Finally, Appellants' duty arguments fail for one more important reason: Appellants fail to provide any sort of limitation on the legal duty they seek to impose. Failing to provide any sort of boundary for the employer would have severe public policy implications. As both G4S and the trial court noted, Appellants' failure to provide any sort of spatial or temporal limits in the articulation of their concept of duty would essentially result in G4S being strictly liable and an absolute guarantor of Mateen's behavior while off duty at all times. *See Garcia v. Duffy,* 492 So. 2d 435, 439 (Fla. 2d DCA 1986) ("Once liability began to be imposed on employers for acts of their

employees outside the scope of employment, the courts were faced with the necessity of finding some rational basis for limiting the boundaries of that liability; otherwise, an employer would be an absolute guarantor and strictly liable for any acts committed by his employee against any person under any circumstances. Such unrestricted liability would be an intolerable and unfair burden on employers.").

Appellants have failed to demonstrate the trial court erred in dismissing the amended complaints for failure to allege a duty that is cognizable as a matter of Florida negligence law.

*Affirmed.*

CIKLIN and KUNTZ, JJ., concur.

\*       \*       \*

***Not final until disposition of timely filed motion for rehearing.***