**Gloria LEE, as Surviving Spouse of Roger Earl Lee, Deceased,**
Plaintiff,

v.

**The CLOROX INTERNATIONAL CO., Defendant.**

No. CV 509–012.

United States District Court,
S.D. Georgia,
Brunswick Division.

Sept. 30, 2010.

Brent J. Savage, Savage & Turner, PC, Savannah, GA, Fred Russell Kopp, Fred Kopp, PC, Alma, GA, Karl Christian Zipperer, Savage, Turner, Kraeuter, Pinckney, Britt & Madison, Savannah, GA, for Plaintiff.

Hugh B. McNatt, McNatt, Greene & Peterson, Hugh Peterson, III, Vidalia, GA, James D. Meadows, Balch & Bingham, LLP, Atlanta, GA, for Defendant.

## ORDER

LISA GODBEY WOOD, Chief Judge.

Presently before the Court is Defendant Clorox International Company's Motion for Summary Judgment. Upon due consideration, the Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

### 1. FACTS

Plaintiff Gloria Lee brought this wrongful death action arising from the murder of her husband, Roger Earl Lee ("Mr. Lee"). (*See* Dkt. No. 1.)

Mr. Lee owned a truck and worked as a contract carrier for National Freight, Inc. Defendant Clorox International Co. ("Clorox") hired National Freight, which in turn assigned Mr. Lee, to transport a load of bleach from Clorox's Houston, Texas, facility to its Tampa, Florida, facility on February 22, 2008. The scheduled delivery time was 10:00 a.m., and Mr. Lee had been instructed that he should deliver the load

to the Tampa facility at or before the scheduled delivery time of 10:00 a.m.

On February 22, Mr. Lee arrived at Clorox's Tampa facility at approximately 3:50 a.m., over six hours before the stated delivery time for his load. Mr. Lee approached Alberto Burgos ("Mr. Burgos"), the security guard on duty at the facility that morning. Mr. Burgos told Mr. Lee that he could not enter the facility until it opened at 6:30 a.m. but that he could park under a nearby highway overpass in the meantime. Mr. Lee replied that he would park his truck at a different location adjacent to the facility instead, to which Mr. Burgos did not object. Mr. Lee selected public property on which to park the truck.

Mr. Lee had made a virtually identical trip to the Clorox's Tampa facility less than two months before, on December 31, 2007. For that delivery, Mr. Lee arrived at the facility at 3:32 a.m. He waited outside the facility until it opened at 6:30 a.m., unloaded his truck, and left the facility at 8:38 a.m.

Mr. Lee's February 22 delivery, however, ended in tragedy. An unknown assailant entered Mr. Lee's truck as it was parked on the public street at approximately 4:30 a.m. and shot Mr. Lee, who died at the scene. Plaintiff filed an action claiming wrongful death on January 23, 2009 in the State Court of Bacon County, Georgia. (Dkt. No. 1.) Clorox removed the case to federal court on March 5, 2009. (*Id.*) Clorox then filed the present Motion for Summary Judgment. (Dkt. No. 26.)

## DISCUSSION

### 1. STANDARD OF REVIEW

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must view the evidence and draw all inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To discharge this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but must come forward with "specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56(e)(2).

### 2. PLAINTIFF'S CLAIMS

The parties are in agreement that Florida law governs Plaintiff's wrongful death action. Plaintiff's claim is based on a theory of negligence, which under Florida law, is comprised of the elements of duty, breach, causation, and damages. *See Biglen v. Fla. Power & Light Co.*, 910 So.2d 405, 408 (Fla. 4th Dist.Ct.App.2005). Clorox claims that "Plaintiff cannot establish a duty existed between Clorox and Mr. Lee and cannot show Clorox proximately caused Mr. Lee's death," such that Plaintiff's "negligence claim fails as a matter of law, and Clorox is entitled to summary judgment." (Def.'s Mot. Summ. J. 8.).

#### a. Duty

Clorox claims, and Plaintiff does not dispute, that there are three related possible bases for duty at issue in this case: (1) a

duty arising out of the creation of a foreseeable risk of harm; (2) a duty to protect against third party misconduct; and (3) a duty to warn. (*See id.*)

i. Creation of Foreseeable Zone of Risk

The Florida Supreme Court has recognized that a duty may be imposed based on the creation of a foreseeable zone of risk:

> Where a defendant's conduct creates a *foreseeable zone of risk*, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses.

■ *McCain v. Fla. Power Corp.*, 593 So.2d 500, 503 (Fla.1992). Thus, a duty may be imposed where a defendant's conduct (1) creates (2) a foreseeable zone of risk. *See Demelus v. King Motor Co. of Fort Lauderdale*, 24 So.3d 759, 761 (Fla. 4th Dist.Ct.App.2009) ("To impose a duty, it is not enough that a risk merely exists or that a particular risk is foreseeable; rather, the defendant's conduct must create or control the risk before liability may be imposed.").

■ While the parties argue the foreseeability of Mr. Lee's murder, the determinative issue here, irrespective of foreseeability, is whether Clorox's conduct created the relevant risk of harm. Under Florida law, "the foreseeable risk must be one that comes into being as a result of the defendant's act or omission." *Aguila v. Hilton, Inc.*, 878 So.2d 392, 396 n. 2 (Fla. 1st Dist.Ct.App.2004).

The parties cite no factually analogous cases, and Florida case law provides only limited guidance as to the distinction between conduct that creates a foreseeable risk and conduct that does not. In *Demelus*, a motorist claimed that an automobile dealership that had negligently secured its car lot was liable for an accident involving the motorist and a third party who had stolen a car from the dealership's lot. 24 So.3d at 759. In affirming the trial court's judgment that the dealership had no duty to the plaintiff, the appellate court for Florida's fourth district found that the dealership's "conduct did nothing to *create* a risk of harm." *Id.* at 765. The court explained that "[f]or [the dealership] to have created a risk of third-party criminal conduct, it would have had to, for example, affirmatively make its vehicles available to the thieves." *Id.*

The appellate court for the first district of Florida has also discussed when a defendant's conduct creates a risk of harm. In *Aguila*, a plaintiff brought a wrongful death suit against the owner of a motel for the death of a motorist who was killed by an intoxicated driver. 878 So.2d at 394. The intoxicated driver had attended a private party in one of the motel's guest rooms until a motel security guard asked all of the room's occupants to leave the room. *Id.* At that point, the intoxicated driver got into his car, began driving on public roads, and caused an automobile accident that resulted in the motorist's death. *Id.* at 395. Even though the intoxicated driver was ostensibly merely complying with the security guard's request to leave the room, the appellate court affirmed summary judgment in favor of the motel, holding that "[i]t does not follow ... that the act of ordering all of the [occupants] out of the room *created* the risk." *Id.* at 397. The court explained that the individuals occupying the room "were all free to leave of their own accord, and we cannot say how long they may have remained at the party had they not been asked to leave." *Id.* The court distinguished the case from *Bardy v. Walt Disney World Co.*, 643 So.2d 46 (Fla. 5th Dist.Ct.App.1994), where the defendant's security guard did create a foreseeable

risk by "eject[ing] a drunken Disney employee from the premises and order[ing] the employee to remove his car, despite his protests that he was too intoxicated to drive." *Id.* at 396.

Although *Demelus* and *Aguila* contain numerous factual nuances, they both support the proposition that for a defendant's conduct to create a risk, the defendant must take an affirmative step that goes directly and necessarily to the creation of a foreseeable risk.

■ Without citing any authority, Plaintiff argues that "Clorox's actions in refusing to allow Mr. Lee to await his delivery time in the safety of its gated facility in a poorly-lit section of a neighborhood known to suffer from a high crime rate created a foreseeable zone of risk." (Pl.'s Resp. to Def.'s Mot. Summ. J. 7.) Plaintiff's argument fails.

Clorox's policy of denying entry to truck drivers who arrive at the facility when the facility is closed does not go directly to the creation of a foreseeable risk of harm. The relevant foreseeable risk of harm in this case comes from the high crime rate in the vicinity of Clorox's facility, not Clorox's policy. Clorox was not an active participant in any criminal act, nor did Clorox actively supply prospective criminals with the instrumentalities of criminal conduct. *See Demelus*, 24 So.3d at 763 (noting that defendant car dealership "was not complicit" in theft that resulted in plaintiff's injury and it "did not make [car] keys available to the thieves who caused" the injury). Moreover, there is no evidence suggesting that the high rate of crime near the facility exists because of Clorox's delivery truck entrance policy. It thus cannot be said that the foreseeable risk—in this case, the risk of being the victim of a crime near the facility—"comes into being as a result of the defendant's act

or omission." *Aguila*, 878 So.2d at 396 n. 2.

Clorox's policy is just one of a number of decisions and factors that led to Mr. Lee's death. In *Aguila*, the court noted that even though the defendant's security guard ordered the accident-causing driver out of a room, the defendant did not create the risk in part because the driver was not forced to drive intoxicated as a result of being thrown out of the room. 878 So.2d at 397. The driver "could have decided to remain at the motel in common areas, ... walk to other parties in nearby hotels," or do any number of things other than drive intoxicated. *Id.* In the present case, a number of decisions and factors that were out of Clorox's control led to Mr. Lee's death. Knowing from his previous visit that he would be turned away from the facility before 6:30 a.m., Mr. Lee could have chosen to arrive after 6:30. After he was denied entry, Mr. Lee could have parked in any number of locations, such as under the nearby highway overpass as Clorox's guard suggested or even on the other side of Tampa. Moreover, Clorox had no control over the unknown assailant who actually committed the murder. Even assuming that "the decision as to whether to allow Mr. Lee inside the facility at that time was at the sole discretion of Clorox" (Pl.'s Resp. to Def.'s Mot. Summ. J. 7.), every other factor that led to Mr. Lee's death is not even alleged to have been under Clorox's control.

The thrust of Plaintiff's argument is, in effect, that but for Clorox's policy, Mr. Lee's murder probably would not have occurred. Although Plaintiff may be correct, that Clorox's policy happened to be one link in a chain of events that led to Mr. Lee's tragic death, it is not true in logic or law that Clorox's policy *created* or *controlled* the foreseeable risk of harm in this case. There is no evidence that Clorox

created or controlled the risk. As a result, Clorox has no duty to Mr. Lee based on the creation or control of the risk.

### ii. Duty to Protect Against Third Party Misconduct

■ Under Florida law, a party generally has no duty to "prevent the misconduct of third persons." *K.M. ex rel. D.M. v. Publix Super Markets, Inc.*, 895 So.2d 1114, 1117 (Fla. 4th Dist.Ct.App.2005) (quoting *Michael & Philip, Inc. v. Sierra*, 776 So.2d 294, 297 (Fla. 4th Dist.Ct.App. 2000)). Florida courts, however, have recognized a limited number of exceptions to the rule. Plaintiff argues that two of the exceptions—the "special relationship" exception and the *"Daly* control" exception apply in this case. As explained below, neither exception applies to the present case. The undisputed facts show that Clorox had no duty to prevent the misconduct of third parties.

Plaintiff claims that Clorox had a duty to protect Mr. Lee from third party misconduct under the special relationship exception to the general rule of non liability. Florida has adopted *Restatement (Second) of Torts* § 315 (1965), *see K.M. ex rel. D.M.*, 895 So.2d at 1117, which states:

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless ... a special relation exists between the actor and the other which gives to the other a right to protection.

Florida courts have recognized the special relationships between employers and employees, landlords and tenants, landowner and invitees, schools and minor students, operators of places of public entertainment and their patrons, parents and children, law enforcement officers and members of the public, and common carriers and their passengers. *See Gross v. Family Serv. Agency, Inc.*, 716 So.2d 337, 338–39 (Fla. 4th Dist.Ct.App.1998); *see*

*also* 6 *Fla. Prac, Personal Injury & Wrongful Death Actions* § 1:8 (2008–09 ed.); *Restatement (Second) of Torts* § 314A (noting the following special relationships: (1) common carrier and passengers, (2) innkeeper and guests, (3) possessor of land who holds it open to the public and members of the public who enter in response to the invitation, and (4) "one who is required by law or voluntarily takes custody of another under circumstances such as to deprive the other of his normal opportunities for protection").

Of the special relationships that are already well-established under Florida law, Plaintiff argues that the relationship between Clorox and Mr. Lee falls under the "landowner-invitee category of special relationship explicitly recognized by Florida courts." (Pl.'s Resp. to Def.'s Mot. Summ. J. 12.) Specifically, Plaintiff claims that Mr. Lee was a "business visitor," a type of invitee. *Id.* The *Restatement* definition, which the Florida Supreme Court has adopted, provides that a business visitor is "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Bovis v. 7–Eleven, Inc.*, 505 So.2d 661, 663 (Fla. 5th Dist.Ct. App.1987) (quoting *Restatement (Second) of Torts* § 332 (1965)).

Plaintiff's argument that Clorox and Mr. Lee shared a special "landowner-invitee" relationship fails for two primary reasons. First, the "landowner-invitee" relationship generally arises in premises liability cases, where the invitee actually enters the landowner's property. *See Bovis*, 505 So.2d at 663. The *Restatement* describes a business visitor as one who "come[s] upon land." *Restatement (Second) of Torts* § 332 cmt. e. Plaintiff does not dispute that Mr. Lee never actually entered Clorox's land or that Mr. Lee's murder occurred off Clorox property.

Second, an invitee must be invited to enter the landowner's land. *Restatement (Second) of Torts* § 332 cmt. b ("Although invitation does not in itself establish the status of an invitee, it is essential to it."). "[A]n invitation is conduct which justifies others in believing that the possessor desires them to enter the land." *Id.* Here, Plaintiff's entire case is premised on the fact that Mr. Lee was not invited to enter Clorox's property at the time of his injury. The essence of Plaintiff's complaint is that he was barred from entering and was injured as a result. Moreover, even before Clorox refused him entry, Mr. Lee could not have justifiably believed that he was invited to enter the facility until 6:30 a.m., given that the last time he had arrived early with the identical 10 a.m. delivery time, he was refused entry until the facility opened at 6:30 a.m. Indeed, Plaintiffs do not dispute that Mr. Lee was well-aware that he would only be allowed to enter the facility at 6:30 a.m. in accordance with Clorox's general policy. Thus, at the time he was murdered, Mr. Lee was not an invitee, and no special landowner-invitee relationship existed.

While neither the landowner-invitee special relationship nor any of the other well-established special relationships apply in this case, Plaintiff correctly notes that Florida authorities are in agreement that "[t]he recognized special relationships continue to evolve." *Janis v. Pratt & Whitney Canada, Inc.,* 370 F.Supp.2d 1226, 1230 (M.D.Fla.2005); *see also* 6 *Fla. Prac., Personal Injury & Wrongful Death Actions* § 1:8 ("While the categories of special relationships that give rise to a duty to prevent third persons from harming others are limited, there are many other forms of special relationships that exist in our soci-

ety today which may create legal duties between the parties.").

Plaintiff stops short of asking the Court to recognize a new category of special relationship that would apply in this case.[1] Had Plaintiff argued that the facts of this case gave rise to a new special relationship, that argument would have failed. Implicit in every special relationship is the recognition that the party bearing a duty to the other has the ability or right to control the other party's behavior. Thus, a special relationship is limited in scope by the duty-owing party's ability or right to control the other. In *Concepcion v. Archdiocese of Miami,* for example, a Florida appellate court affirmed a grant of summary judgment for defendants, holding that a high school did not owe a duty to its student, where the student was assaulted on a public sidewalk off school grounds and after school hours while not engaged in a school-related activity. 693 So.2d 1103 (Fla. 3d Dist.Ct.App.1997). In so holding, the court acknowledged that Florida law generally "impose[s] a duty of reasonable supervision upon school officials for the students' activities while the school is entrusted with their care." *Id.* at 1104. Underlying the court's holding is the recognition that a school's duty to its student is limited by the school's ability and authority to supervise and control the student's behavior. Thus, when a student is off school grounds after school has ended and is not engaged in a school-related activity, the school has no ability or authority to control the student and does not have a corresponding duty to protect the student.

■ In present case, no special relationship between Mr. Lee and Clorox could exist because Clorox lacked the authority

---

1. In this case, Mr. Lee was an independent contractor of an independent contractor hired by Clorox. The Court finds that there is no special relationship based on such a relationship.

and ability to control Mr. Lee. While contractually obligated to deliver his load to Clorox's facility at or before 10 a.m., Mr. Lee was not under Clorox's control at the time of his death. Clorox retained and exercised its authority to exclude individuals from its facility, but the ability and authority to exclude Mr. Lee from its property in itself surely does not constitute control over Mr. Lee. That Clorox lacked the ability and authority to control Mr. Lee at the time of his death thus precludes the possibility that Clorox and Mr. Lee shared any sort of special relationship, established or novel, given the facts of this case. As a result, Clorox did not owe a duty to Mr. Lee based on the "special relationship" exception to the general rule of non-liability for third party misconduct.

■ Plaintiff argues in the alternative that Clorox had a duty to protect Mr. Lee from third party misconduct under the *Daly* test. (Pl.'s Resp. to Def.'s Mot. Summ. J. 12.) That test imposes a duty to protect others from torts committed by third parties where the defendant controls the: "(1) instrumentality; (2) premises on which the tort was committed; or (3) tortfeasor." *Daly v. Denny's, Inc.,* 694 So.2d 775, 777 (Fla. 4th Dist.Ct.App.1997). No argument or evidence was advanced that Clorox controlled the instrument or the tortfeasor. Here, Plaintiff argues that Clorox controlled "the premises on which the third party's act was committed" to the extent that "Clorox had actual control over whether Mr. Lee would be allowed inside the facility, as well as over the lighting in the area outside the facility." (Pl.'s Resp. to Def.'s Mot. Summ. J. 12.) However, the undisputed proof shows that Clorox controlled the facility where the tort was *not* committed. Clorox did not control the public property on which the tort occurred.

■ The parties do not dispute that Mr. Lee was killed on public property. Refus-

ing to admit truck drivers into a facility before the facility is open does not constitute control over the public property outside of the facility.

■ Plaintiff's argument regarding the lighting in the area is equally unavailing. Plaintiff cites a number of deposition transcripts as evidence that Clorox controlled the lighting in the area outside the facility. (Pl.'s Resp. to Def.'s Mot. Summ. J. 4.) Considering the depositions in the light most favorable to the Plaintiff, the only facts that emerge are that (1) Clorox had lighting at its facility in the area where Mr. Lee was killed; (2) at least one light bulb at the facility may have been out, such that the area may have been poorly lit; and (3) Clorox replaced at least one bulb after the incident. *See* Houston Dep. 12:25–13:1, Sept. 11, 2009 (recalling "it was sort of dark over there"); *see also* Strehl Dep. 12:25–13:3, June 2, 2009 ("I believe there were [new light bulbs installed at the facility]—I don't know of any lights that were actually additional lighting put in. I know that there was a light bulb replaced."); Cardona Dep. 10:13–15, May 22, 2009 ("Well, there's a few street lights. Clorox had some lighting on the side and I believe there's a lumbar [sic] yard across the street that has some lighting as well."); Burgos Dep. 26:15–16, May 22, 2009 ("[Clorox] installed new lighting surrounding the buildings" after the incident.); Bastin Dep. 12:17–19, May 22, 2009 ("Clorox—we put additional lighting on that side of the building and one of our neighbors also put more outside lighting on" after the killing).

Plaintiff does not suggest that Clorox controlled the public street lights in the area or that Clorox controlled that area in some other way unrelated to lighting. Plaintiff thus argues, in essence, that because Clorox had outdoor lighting within its facility that affected the relative bright-

ness of an area on a public street, Clorox should be found to have had actual or constructive control over the public street. Plaintiff does not cite any legal authority that supports her position. Indeed, under Plaintiff's proposed rule, an owner of a tall, well-lit building might be found to have control over dozens of city blocks by virtue of that building's lighting alone. Plaintiff's argument that Clorox had actual or constructive control over the public street where Mr. Lee was killed has no merit. As a result, Clorox did not have a duty to protect Mr. Lee from third party misconduct under the *Daly* exception.

### iii. Duty to Warn

Plaintiff claims that Clorox had a duty to warn Mr. Lee because it had actual knowledge of the conditions that led to Mr. Lee's death.

Plaintiff cites *Shurben v. Dollar Rent–A–Car*, 676 So.2d 467 (Fla. 3d Dist.Ct.App. 1996) in support. In *Shurben*, the plaintiff, Ms. Shurben, was a British tourist who purchased a travel package to Miami that included the use of a rental car from defendant Dollar Rent–A–Car ("Dollar"). *Id.* At the time of Ms. Shurben's trip, "rental cars bore a license plate designation which knowledgeable criminals knew identified the car as a rental." *Id.* at 468. Dollar knew that criminals had targeted rental cars in Miami with such license plate designations. *Id.* Moreover, it knew that Ms. Shurben was a British tourist who probably was not aware that her rental car could make her a target of criminal activity. *Id.* The appellate court found that because of Dollar's actual knowledge of the risk of harm, "Dollar had a duty to warn Shurben of foreseeable criminal conduct, particularly in light of the superior knowledge of the car rental company." *Id.* Citing *Shurben*, Plaintiff argues that Clorox had "actual knowledge of the danger of criminal activity" around its facility and

knew or should have known that Mr. Lee would not have such knowledge, such that Clorox had a duty to warn. (Pl.'s Resp. to Def.'s Mot. Summ. J. 10.)

What distinguishes Plaintiff's case from *Shurben* and other Florida cases finding a duty to warn, however, is that in this case, there is no special relationship between Clorox, the defendant, and Mr. Lee, the individual who allegedly should have been warned. The court in *Shurben* never implied that Dollar had any duty to warn tourists in Miami generally or to warn tourists who rented cars from other companies. Indeed, the court stated, "Based on the knowledge it had on hand, Dollar should have realized that criminals were targeting tourist car renters in certain areas of Miami and that a reasonable rental company in possession of those facts would understand that *its customers* would be exposed to unreasonable risk of harm if not warned." *Shurben*, 676 So.2d at 468 (emphasis added).

Plaintiff perhaps relies on *Shurben* because the opinion never explicitly states that a relationship is required for the law to impose a duty to warn. Florida courts interpreting *Shurben*, however, have made clear that a special relationship is necessary. *See K.M. ex rel. D.M. v. Publix Super Markets, Inc.*, 895 So.2d 1114, 1119 (Fla. 4th Dist.Ct.App.2005) ("*Shurben* did not specifically mention the special relationship doctrine. However, we explained in *Family Services* that *Shurben* 'demonstrated that Florida courts have been especially sensitive in finding the requisite special relationship to exist'" (quoting *Gross v. Family Servs. Agency, Inc.*, 716 So.2d 337, 339 (Fla. 4th Dist.Ct.App. 1998)).) Indeed, courts citing *Shurben* have not only noted that a special relationship existed in that case, but have suggested that *Shurben*, in fact, stands for the proposition that such a relationship must

exist before the law can impose a duty to warn of third party misconduct. *See K.M. ex rel. D.M.*, 895 So.2d at 1119 ("The special relationship in *Shurben* was the customer-rental agency relationship. The special relationship test is a limitation on the scope of one's liability for the intentional acts of third parties."). Unsurprisingly, then, Florida cases where courts have found a duty to warn another of third party conduct involve parties that have special relationships. *See e.g., T.W. v. Regal Trace, Ltd.*, 908 So.2d 499, 506 (Fla. 4th Dist.Ct.App.2005) (finding that landlord had duty to warn tenant of risk of criminal activity); *Gross*, 716 So.2d at 337 (finding that university could have duty to warn its student of criminal activity).

■ In this case, the only special relationship Plaintiff raises as a possibility is a landowner-invitee relationship. As discussed above, the facts of this case simply do not give rise to a special relationship. Clorox, therefore, did not have a duty to warn Mr. Lee of criminal activity in the vicinity of the facility.

### b. Proximate Cause

Clorox also claims that even if it had a duty to Mr. Lee, it is entitled to summary judgment because Plaintiff could not prove proximate cause. In this case, because Plaintiff cannot present sufficient evidence establishing a duty, the question of proximate cause is moot.

### CONCLUSION

The Court is cognizant of the heavy burden Defendant Clorox must bear before summary judgment should be granted in its favor. Clorox, however, has shown that Plaintiff has no evidence to support the imposition of a duty in this case, and Plaintiff has failed to establish the existence of a dispute of material fact. For the reasons stated, Defendant's Motion for Summary Judgment is **GRANTED**.