# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

———————————————

VALERIE BROWN,

Appellant,

v.

FLORIDA HEALTH SCIENCES CENTER, INC.,
d/b/a TAMPA GENERAL HOSPITAL,

Appellee.

No. 2D2024-1384

———————————————

February 4, 2026

Appeal from the Circuit Court for Hillsborough County; Anne-Leigh Gaylord Moe, Judge.

Maegen Peek Luka of Newsome Melton, Orlando; and James W. Holliday and Ted Karatinos of Holliday Karatinos Law Firm, Lutz, for Appellant.

Bryan D. Hull and Laura B. Labbee of Bush Ross, P.A., Tampa, for Appellee.

LaROSE, Judge.

Valerie Brown appeals the trial court's final summary judgment entered in favor of Florida Health Sciences Center, Inc., d/b/a Tampa General Hospital (TGH).[1]  Ms. Brown sued TGH for negligence, alleging

---

[1] We have jurisdiction.  *See* Fla. R. App. P. 9.030(b)(1)(A).

failure to protect her from a patient's attack.  The trial court found that TGH did not owe a duty to Ms. Brown because she was a trespasser.  It also found no foreseeable zone of risk of attack from a patient.  Because the existence of material factual issues precluded entry of a summary judgment, we reverse.

## I.    Background

A mother admitted her adult son to TGH for treatment.  She told staff that her son had been angry and subject to mood swings during the past few weeks.  She advised that something was "off" with him.  She also informed staff that her son had been experiencing "auditory and visual hallucinations."  She told a nurse that her son did not like being alone without her.

After the mother left the hospital, her son called her repeatedly, reporting that he was going to leave.  TGH staff also called the mother, advising that her son was misbehaving, confused, and incapable of making decisions.

The son ripped out his IV tube multiple times.  He told TGH staff that he thought the police were there.  TGH staff noted his agitation.  They also caught him wandering the halls saying he was looking for the "professor."

TGH assigned a nursing student to monitor him.  TGH staff also consulted a psychiatrist who ordered a psychological evaluation.  A medical resident conducted the evaluation and determined that the patient posed no threat to himself or others.

After the evaluation, six TGH staff members escorted the patient to a room with video monitoring.  They placed him in the same room as Ms. Brown's father, who was also a patient.  Her father was strapped to a bed, recovering from spinal surgery.

2

At the time, Ms. Brown was visiting her father. She heard the new patient tell staff that he was "an emperor." Ms. Brown told a nurse that she was concerned and afraid for her father's safety because the patient thought he was an emperor and was jumping up and down on the bed. When the nurse refused to discuss the situation with her, Ms. Brown spoke with another nurse about the continued erratic behavior. The nurse advised that neither patient could be moved.

The patient continued to make nonsensical statements and was confused. At one point, he screamed for Ms. Brown and her father to look at a "dragon" outside. He then left the room and ran through the hallway, screaming "fire."

Although TGH staff returned him to the room, the patient immediately jumped out of his bed and walked around. He remained noncompliant. At first, when he left his bed, alarms sounded. A few times, Ms. Brown had to find a nurse to turn them off. At some point, the nurses disabled the alarms.

The patient continued to leave his bed. Ms. Brown spoke to a nurse manager who told her that her father was safe. All the while, the patient continued screaming about dragons.

Fearing for her father's safety, Ms. Brown told the nurses that she wanted her father moved. She believed that the new patient was schizophrenic. Nurses told her not to worry. They advised her to go home and return the next day. The nurses then left Ms. Brown in the room with her father and the other patient.

When a nurse came to change her father's IV bag, Ms. Brown, again, voiced her concerns and asked for someone to stay in the room to monitor the situation. According to Ms. Brown, "I wanted that to happen before I left." Finally,

after six or seven times of asking for help and them telling me that he would be okay and the video cameras were monitoring, they had live people, that I had to leave now, that I was trying to tell my dad, but he wasn't all there. I was trying to tell him that if anybody come to talk to him, to press this button, which was his emergency nurse button.

I was leaned over my father's bedside whispering it. And he opened his eyes and was looking at me. But all of a sudden he kind of yelled, and for me, and the way that he was, it was a big deal. And I turned my head, and that's all I remember. I got hit leaning over the bed.

After the attack, the patient was involuntarily committed and placed in an isolated room with security.

This was not TGH's first attack by an unstable patient. TGH's security supervisor testified that occasionally irate or confused patients become violent. Indeed, in the five years prior to the attack, the Tampa Police Department documented at least thirty-nine instances of patients attacking others on TGH property.

Notably, Ms. Brown's nursing and psychiatry experts opined that TGH should have used physical or chemical restraints to keep the patient and others safe. They also explained that the patient's escalating and unruly behavior demanded that TGH direct a psychiatric nurse and security person to assess him.

TGH moved for summary judgment. Shortly before a hearing on the motion, TGH replied to Ms. Brown's response to its motion. It posited that the attack occurred after visiting hours ended and after the staff had asked her to leave. For the first time, TGH asserted that Ms. Brown was a trespasser entitled to few protections from TGH.[2]

---

[2] The duty of care owed to a trespasser is to "not wilfully and wantonly injure [the] trespasser." *Post v. Lunney*, 261 So. 2d 146, 147 (Fla. 1972).

4

The trial court granted TGH's motion. Before rendition of a final summary judgment, Ms. Brown moved for reconsideration or rehearing. She maintained that the evidence showed that TGH owed her a duty of care. TGH reasserted that Ms. Brown was a trespasser.

Ms. Brown then countered that the trespasser argument was not properly before the trial court because TGH raised the argument just five days before the hearing, the trial court did not address the argument until after the hearing, and the trial court declined to take additional arguments on the matter. Ms. Brown also filed an affidavit attesting that TGH staff told her to say goodbye to her father because visiting hours were over. As she was saying goodbye, the other patient struck her.

The trial court partially denied Ms. Brown's motion; it granted the motion to the extent that the trial court clarified its reasoning for its ruling. Specifically, the trial court explained that the "evidence of prior incidents did not, in light of undisputed facts presented, create a genuine issue of material fact that precluded entry of summary judgment." The trial court continued, finding that Ms. Brown was a trespasser when the attack occurred. Alternatively, the trial court found that even if Ms. Brown was an invitee, TGH owed her no duty to protect her from a patient with an undiagnosed mental illness and that prior violent incidents at TGH did not create a foreseeable zone of risk.

## II.    Discussion

The trial court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fision Corp. v. Frueh*, 369 So. 3d 1211, 1215 (Fla. 2d DCA 2023) (quoting Fla. R. Civ. P. 1.510). Our review is de novo. *See SHM Cape Harbour, LLC v. Realmark META, LLC*, 335 So. 3d 754, 758-59 (Fla. 2d DCA 2022).

### 1. *Trespasser vs. Invitee*

Ms. Brown argues that the trial court should not have considered TGH's trespasser argument because TGH raised it too late.

Unfortunately for her, Ms. Brown's fleeting reference in her initial brief about timeliness was insufficient to preserve the issue for our review. *See Lynn v. City of Fort Lauderdale*, 81 So. 2d 511, 513 (Fla. 1955) ("It is elementary that when a decree of the trial court is brought here on appeal the duty rests upon the appealing party to make error clearly appear."); *Coolen v. State*, 696 So. 2d 738, 742 n.2 (Fla. 1997) (noting that the "failure to fully brief and argue [issues in the appellate brief] constitutes a waiver of th[o]se claims").

Although we reject Ms. Brown's timeliness argument, we can consider whether the trial court erroneously found that she was a trespasser. Ms. Brown asserts that there was no evidence that TGH asked her to leave or that she refused. TGH, on the other hand, contends that Ms. Brown became a trespasser when she remained in her father's room after visiting hours.

An invitee may become a trespasser "after the expiration of a reasonable time within which to accomplish the purpose for which [s]he is invited to enter, or to remain." *Byers v. Radiant Grp., L.L.C.*, 966 So. 2d 506, 509 (Fla. 2d DCA 2007) (quoting Restatement (Second) of Torts, § 61 at 425). The trial court made no finding about "reasonable time." Indeed, our record does not disclose how much time elapsed between staff supposedly asking her to leave and the attack. However, our record suggests that Ms. Brown was saying goodbye to her father. Even if staff asked her to leave, a reasonable jury could conclude that the nurses allowed her to remain to complete her visit. *See generally Arp v. Waterway E. Ass'n*, 217 So. 3d 117, 120 (Fla. 4th DCA 2017) ("An invitee

6

is a visitor on the premises by invitation, either express or reasonably implied, of the owner." (citing *Wood v. Camp*, 284 So. 2d 691, 695 (Fla. 1973))).

Ms. Brown's status as a trespasser or invitee is bound up with material factual issues appropriate for jury resolution. *See generally Bottita v. Fla. Power & Light Co.*, 534 So. 2d 1198, 1199 (Fla. 4th DCA 1988) ("It may be that on the facts in a particular case the determination of the category of the plaintiff must be determined as a matter of law by the trial judge, . . . other causes will present a factual issue for the jury as to whether plaintiff is invitee, licensee[,] or trespasser under appropriate instructions." (quoting *Wood v. Camp*, 284 So. 2d 691, 696 (Fla. 1973))). The trial court should have denied the summary judgment motion on this issue. *See Fision Corp.*, 369 So. 3d at 1215.

### 2. Duty of Care

Alternatively, the trial court found that TGH did not owe Ms. Brown a duty of care or that the risk was unforeseeable because her attacker was undiagnosed. Seemingly, the trial court overemphasized TGH's lack of specific knowledge about the patient instead of its general knowledge of disorderly patients and the risks they pose. Our record contains evidence of many patient attacks at TGH. Moreover, it seems incontrovertible that the patient's behavior was bizarre and disturbing.

Assuming that Ms. Brown was an invitee, we note that a property owner owes an invitee "the duty 'to use reasonable care in maintaining property in a reasonably safe condition.' " *Ruiz v. Wendy's Trucking, LLC*, 357 So. 3d 292, 301 (Fla. 2d DCA 2023) (quoting *Knight v. Waltman*, 774 So. 2d 731, 733 (Fla. 2d DCA 2000)). "When considering whether the general facts of a case establish a duty, our focus is on 'whether the defendant's conduct foreseeably created a broader "zone of risk" that

poses a general threat of harm to others.' " *Johnson v. Wal-Mart Stores E., LP*, 389 So. 3d 705, 709 (Fla. 4th DCA 2024) (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992)). "Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." *Ruiz*, 357 So. 3d at 299 (quoting *Sturgill v. Lucas*, 292 So. 3d 462, 465-66 (Fla. 2d DCA 2020)).

Here, the trial court focused largely on a lack of diagnosis. In doing so, the trial court ignored the patient's increasing erratic behavior and TGH's inability or unwillingness to control a situation it created. This was error. *See generally Boynton v. Burglass*, 590 So. 2d 446, 448 (Fla. 3d DCA 1991) ("Under the common law, a person had no duty to control the conduct of another or to warn those placed in danger by such conduct; however, an exception to that general rule can arise when there is a special relationship between the defendant and the person whose behavior needs to be controlled or the person who is a foreseeable victim of that conduct.").

For a duty to arise, TGH need not have actual knowledge of the precise condition that the patient presented. *Cf. Est. of Rotell ex rel. Rotell v. Kuehnle*, 38 So. 3d 783, 789-90 (Fla. 2d DCA 2010) (indicating that the trial court correctly "acknowledged that Dr. Kuehnle need not have been able to foresee the precise injury and manner of injury suffered by the children" for a duty to arise). Rather, TGH must have created the risk of harm. *See Johnson*, 389 So. 3d at 709.

Ms. Brown offered facts suggesting that TGH's conduct foreseeably created a zone of risk. *See generally Demelus v. King Motor Co. of Fort Lauderdale*, 24 So. 3d 759, 761 (Fla. 4th DCA 2009) ("To impose a duty,

8

it is not enough that a risk merely exists or that a particular risk is foreseeable; rather, the defendant's conduct must *create or control* the risk before liability may be imposed."). Indeed, material factual disputes remain as to the control that TGH could or should have exercised. In light of the patient's deteriorating condition, he grew increasingly erratic and noncompliant. Ms. Brown's experts testified about actions TGH should have taken to defuse a challenging situation that it set in motion. Further, factual issues remain about TGH's knowledge of violent and unruly conduct by other patients that bear on whether a reasonable zone of risk existed. The record reflects numerous instances of patient attacks on others. Consequently, a jury could conclude that TGH took responsibility for the patient's behavior and owed a duty to protect Ms. Brown.

The material facts are unresolved as to whether TGH owed a duty of care to control its patient who experienced escalating behavioral problems. "We do not think it too onerous a burden to place upon it the duty to exercise reasonable care in carrying out its efforts." *Cf. Nova Univ., Inc. v. Wagner*, 491 So. 2d 1116, 1118 (Fla. 1986) ("The Nova Living and Learning Center, for a fee, undertakes to rehabilitate children with emotional and behavior problems. We do not think it too onerous a burden to place upon it the duty to exercise reasonable care in carrying out its efforts.").

### III. Conclusion

The existence of unresolved material factual issues precluded summary judgment for TGH. *See Fision Corp.*, 369 So. 3d at 1215. We reverse the final summary judgment.

Reversed.

NORTHCUTT and KELLY, JJ., Concur.

_____

Opinion subject to revision prior to official publication.